**Judith A. NEAL, Plaintiff–Appellee,**

v.

**HONEYWELL INC. and Alliant Techsystems Inc., Defendants–Appellants.**

**No. 93–3013.**

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1994.

Decided Aug. 31, 1994.

Joshua G. Vincent (argued), William J. Holloway, Robert H. Muriel, Adrienne I. Logan, Hinshaw & Culbertson, Chicago, IL, for Judith A. Neal.

Mary Margaret Sullivan, Ross & Hardies, James A. Burstein, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, James P. Gallatin, Ann D. Davidson, Popham, Haik, Schnobrich & Kaufman, Ltd., Washington, DC, Paul E. Freehling, D'Ancona & Pflaum, Chicago, IL (argued), for Honeywell, Inc. and Alliant Techsystems.

Frank W. Hunger, Office of U.S. Atty. Gen., Douglas Letter, Bruce G. Forrest, Dept. of Justice, Civ. Div., Appellate Section, Washington, DC, James B. Burns, Office of U.S. Atty., Chicago, IL, for U.S. amicus curiae.

Before EASTERBROOK and RIPPLE, Circuit Judges, and DILLIN, District Judge.*

EASTERBROOK, Circuit Judge.

In 1987 Judith Neal concluded that coworkers were falsifying ammunition test data at the Joliet Army Arsenal Plant, which Honeywell Inc. administered. She told Honeywell's legal counsel, who immediately notified the Army and commenced an investigation. Senior managers concluded that Neal's allegations were correct; so did public prosecutors. Two of Honeywell's employees pleaded guilty to defrauding the United States. Without requiring the United States to bring a civil suit under the False Claims Act, 31 U.S.C. §§ 3729–31, Honeywell agreed to a settlement worth approximately $2.5 million. Although the United States, Honeywell, and the culpable employees thus resolved the matter, Neal's supervisors at Joliet took umbrage at her honesty, which they believed jeopardized Honeywell's contract and thus their jobs. Neal alleges that these supervisors harassed her and threatened her with physical harm. She took this as an instruction to vamoose, and she quit. More than five years later she filed this suit under 31 U.S.C. § 3730(h), seeking damages for the retaliation.

Section 3730(h), added to the False Claims Act in 1986, is designed to protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime. The statute provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

Neal contended that she had been threatened, harassed, and constructively discharged on account of "lawful acts ... in furtherance of an action under this section". Honeywell replied that because the United States settled rather than sued, there was no "action under this section" and § 3730(h) is inapplicable. Moreover, Honeywell contended, by waiting more than five years to sue, Neal missed the statute of limitations under Illinois law. Honeywell moved to dismiss the suit under Fed.R.Civ.P. 12(b)(6).

The district court denied this motion. 826 F.Supp. 266 (N.D.Ill.1993). The court wrote that, because neither the United States nor Neal herself had filed suit under the statute, "there can be no doubt that Ms. Neal's actions here do not fall within the literal language of the False Claims Act." *Id.* at 271. Nonetheless, the court believed, "federal whistleblower protection laws are to be

---

* Hon. S. Hugh Dillin, of the Southern District of Indiana, sitting by designation.

broadly construed to cover internal whistle-blowers, even where the specific conduct at issue does not fall within a literal reading of the statute." *Ibid.* Permitting Neal to recover for retaliation would promote the purposes of the Act and therefore, the court believed, is authorized without regard to the statutory language.

Next the court took up the statute of limitations. Neal filed her suit more than five, but fewer than six, years after the retaliatory events. Honeywell contended that federal courts should draw the statute of limitations from state law—in this case, the five years Illinois allows for such claims. But the district court concluded that 31 U.S.C. § 3731(b) supplies a six-year period:

A civil action under section 3730 may not be brought—

(1) more than 6 years after the date on which the violation of section 3729 is committed....

A suit under § 3730(h) protesting retaliation is "[a] civil action under section 3730", and Neal filed within six years after the "violation of section 3729"—that is, within six years of Honeywell's false claims. Therefore, the district court held, "the plain language of section 3731(b)" compels decision in Neal's favor even though this reading creates a possibility that the time for suit will expire before the retaliation occurs. 826 F.Supp. at 273. Later the court certified its decision for interlocutory review under 28 U.S.C. § 1292(b), and we accepted Honeywell's appeal.

Honeywell has not missed the fact that the district court discarded the statutory language in favor of its understanding of public policy on one branch of the case, only to employ a "plain language" approach on the other—each time to Honeywell's detriment. Inconsistency is infectious. Neal embraces the district court's approach, and Honeywell argues for an equal and opposite contradiction: plain-language treatment of § 3730(h) but a modification of § 3731(b)(1) in light of its supposed functions. But the Supreme Court insists that we take statutes seriously, bending their language only when the text produces absurd results. *Chicago v. Environmental Defense Fund,* —— U.S. ——, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994);

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994); *National Organization for Women, Inc. v. Scheidler,* —— U.S. ——, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). We think it both possible and desirable to read these two statutes exactly as written.

Start with § 3730(h). The district court quickly concluded that Neal cannot prevail under the language of the statute and then declined to apply that language, instead invoking a principle that whistleblower statutes should be "broadly" construed. This is a variant on the theme that remedial statutes should be generously construed. As we remarked recently, the essential question is not which way the statute points but *how far* it directs one to go in that direction. *Stomper v. Amalgamated Transit Union,* 27 F.3d 316, 320 (7th Cir.1994). The text of the law is not just evidence about how much one interest (here, the government's in obtaining information by relieving employees of fear) should be preferred over another (here, the employer's in managing its labor force); the text is the *decision* about what to do—a decision approved by the Constitution's own means, bicameral approval and presidential signature. No principle of statutory construction says that after identifying the statute's accommodation of competing interests, the court should give a favored party a little extra. Any tendency to treat statutes regulating ethical dealing with the government as a species of common law, to be adjusted by courts according to their sense of contemporary needs, was squelched by *Crandon v. United States,* 494 U.S. 152, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990).

Congress enacted a rule, 18 U.S.C. § 209, preventing public employees from receiving additional compensation from private sources. Following a tradition of administrative construction, a court of appeals extended this statute to bar severance payments made by a private employer and before public service begins, if the employer would not have made such payments to employees leaving for jobs in the private sector. The Supreme Court unanimously reversed, concluding that the statute set its own limits. That the

subject was ethics did not justify disregarding the statutory language. As the Court pointed out, all laws, including ethics rules, are compromises among competing interests. In *Crandon* the government wanted to hire employees not beholden to any private firm; the former employer wanted to encourage public service by its employees by easing the financial sacrifice (doubtless in the hope that they would return with valuable information and entrée); whether one of these interests triumphs over the other, or whether instead they coexist uneasily, is determined not by natural justice but by the political process, which created a text.

■ Just so here. Congress wanted to make employees feel more secure in reporting fraud to the United States and in commencing *qui tam* litigation, the better to reduce the amount of fraud in federal procurement. But this comes at a cost. Some employees will cry "fraud" to make pests of themselves, in the hope of being bought off with higher salaries or more desirable assignments. Others will perceive the disappointments of daily life as "retaliation" and file suits that have some settlement value because of the high costs of litigation and the possibility of error. Careless cries of fraud are less culpable, but may be no less costly, than extortionate ones. Dealing with false alarms drains time from productive activities. Section 3730(h) does not throw one set of interests to the winds in order to protect the other; it is a compromise between them. And it should not be surprising that Congress has struck the balance in different ways at different times. The district court pointed to a number of other statutes that explicitly offer employees additional protections, e.g., 42 U.S.C. § 5851(a), and concluded that § 3730(h) should be construed to afford Neal the same benefits. Yet there is no rule that all statutes addressing related topics mean the same thing—let alone that all statutes should receive the reading most favorable to whistleblowers. Why not treat all whistleblower laws as identical to the statute most favorable to employers, or treat all as if they were right in the middle? Instead there is a longstanding principle that different language implies different meaning. See *Fogerty v. Fantasy, Inc.,* —— U.S. ——,

114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (rejecting the conclusion that all fee-shifting statutes should be treated as minor variations on 42 U.S.C. § 1988). This is a jumping off point rather than a rigid rule; a statute's context (both linguistic and historical) may show that different verbal formulations have the same meaning. We must start, however, with the enacted language—the language of § 3730(h) rather than the language of the many other statutes that the district court collected.

Section 3730(h) has never been construed (indeed, has never been cited) by a court of appeals. We were not so sure as the district court that the unadorned text of § 3730(h) supports Honeywell, and we invited the United States to file a brief as *amicus curiae.* (We had a second reason for issuing the invitation: the possibility that Neal's theory of damages undercuts the federal interest. More on that later.) The United States concluded that the statute supports Neal without a thumb on the scales of justice, and we share this assessment.

The statute protects "lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section". As the district court assumed, an "action" must be a formal proceeding of some kind—if not a lawsuit, then an adjudicatory administrative proceeding. (The APA uses much of the language and forms of litigation.) Section 3730(h) speaks of an "action filed or to be filed", and settlement negotiations are not "filed". The word "action" appears throughout § 3730, and each time the context reveals that the word connotes formal legal proceedings. Words take their meaning from context, and the language of § 3730(h) shows that the word "action" is used in the same sense there as in other subsections. See also *CIR v. Keystone Consolidated Industries, Inc.,* —— U.S. ——, ——————, 113 S.Ct. 2006, 2011–12, 124 L.Ed.2d 71 (1993) (words presumptively mean the same thing throughout a statute).

Honeywell believes that the lack of a suit dooms Neal's claim, but the statute does not say this. Suppose Neal had supplied information during the "investigation" of a suit

"to be filed" in the future. No one would suppose that Honeywell could fire Neal the next day just because no "action" was pending. The statute expressly covers investigatory activities preceding litigation. What Neal did, supplying information that set off an investigation, fits comfortably into this category. Then the question becomes: by satisfying the government's demands, did Honeywell purchase an option to retaliate against Neal? That depends on whether litigation is a condition subsequent, necessary to perfect the protection for activities that were sheltered at the moment of their commission, or whether instead the statute applies according to how things stood at the time of the investigatory activity. The disjunctive construction ("filed or to be filed") implies the latter. Honeywell wants us to treat the statute as if it said: "If any action is eventually filed, then any employee who is discharged ... (etc.)." It makes both linguistic and practical sense to understand the actual "filed or to be filed" formulation as linking protection to events as they were understood at the time of the investigation or report. And when Neal reported what she had learned, litigation was a distinct possibility.

One cannot be sure that "to be filed" has this meaning; it *could* be limited to ensuring that the employer may not retaliate for reports made before the litigation gets under way. But Honeywell does not offer any reason to believe that Congress wanted to protect employees in doubtful cases (the kind that breed litigation) but leave them unprotected when the fraud is so clear that the employer capitulates, averting litigation. Firms that have committed extensive frauds are also, one would suppose, well stocked with the kind of managers who would not take kindly to being caught. Nothing in the language or background of § 3730(h) suggests that, by paying enough to cause the government to forego suit, employers acquire the right to shoot the bearers of bad tidings.

We appreciate the force of the reply that this understanding makes the entire phrase "filed or to be filed"—and perhaps the references to "action"—surplusage. If a whistleblower can claim protection whether or not suit is filed, what function does this language serve? One potential answer—that the language excludes coverage for investigations and reports after the litigation has concluded—is too facile. Investigation precedes rather than follows litigation. A better understanding is that "to be filed" limits coverage to situations in which litigation could be filed legitimately—that is, consistently with Fed.R.Civ.P. 11. Then an employee who fabricates a tale of fraud to extract concessions from the employer, or who just imagines fraud but lacks proof, legitimately may be sacked. No action is "to be filed" in either case, and employees who use reports of fraud to better their own position, or who behave like Chicken Little, impose costs on employers without advancing any of the goals of the False Claims Act. But Neal's report was not a figment of her imagination; two guilty pleas and a hefty settlement show that civil litigation was a real possibility.

■ Neal's theory of damages presents a second possible difficulty with reading "to be filed" from an *ex ante* perspective. She contends that Honeywell wronged her not only by threatening and constructively discharging her, but also by not informing her that she could file a *qui tam* action under 31 U.S.C. § 3730(b). Neal's complaint seeks as damages not only the income she lost when she quit, but also the recovery she could have had under § 3730(d)(1) had she commenced a suit: up to 25% of the total the United States could have recovered, an amount that could well exceed what Honeywell paid to settle the case. The district court denied Honeywell's request to dismiss this element of Neal's claim. 826 F.Supp. at 273. If the United States had commenced its own suit, Neal could not have litigated independently in pursuit of this bounty. 31 U.S.C. § 3730(e)(3). Extending § 3730(h) to cases in which the government did not sue creates the possibility that Honeywell would be exposed to double recovery, a prospect that would chill settlement and reduce the amount a firm would be willing to pay to the government. The bonanza Neal is seeking also would encourage employees to *claim* retaliation in doubtful cases. They would have little to lose and great wealth to gain. To avoid the risk that ordinary personnel actions would be misunderstood as "retaliation" and

followed by stupendous awards of damages, employers would accord potential plaintiffs privileged status. Making whistleblowers untouchable would not aid the United States. An increase in the expected cost of doing business does not come from investors; customers ultimately pay the tab, and here the customer is the federal taxpayer. By making vendors less efficient, and increasing their legal fees and judgment bills, such a reading of the False Claims Act would increase the price the United States pays for goods and services. As the *amicus* brief of the United States observes, however, the proper response to this concern is not to heave the plaintiff out of court but to make it clear that recovery under § 3730(h) is limited to lost wages and other relief appropriate to wrongful discharge, including, in the language of the statute, "any special damages sustained". Nothing in the False Claims Act requires an employer to admonish an employee to file suit under 31 U.S.C. § 3730(b). The United States Code is notice of its own contents. Many employees are unwilling to claim for themselves a portion of the amount their employer obtained from the public fisc by fraud. Damages under § 3730(h) compensate an employee for harm caused by the harassment and discharge; they are not a substitute for the recovery an employee could have had in a *qui tam* suit.

Honeywell argues in passing that § 3730(h) does not cover reports that were not communicated directly to the United States. At oral argument, however, its lawyer all but conceded that, if we reject its view that a false-claim suit under § 3730(a) or (b) is a precondition to a retaliation suit under § 3730(h), there is little support for limiting § 3730(h) to reports made directly to the United States. After all, § 3730(h) protects "investigation" as well as reports of fraud, and an "investigation" precedes communication. Neal conducted her own investigation and reported her findings through corporate channels, leading to two additional investigations: one by Honeywell and a second by the Army. The conduct limned in her complaint may reasonably be described as both investigation for and assistance in an action "to be filed". Cf. *NLRB v. Scrivener*, 405 U.S. 117, 121–22, 92 S.Ct. 798, 801–02, 31 L.Ed.2d 79 (1972).

■ Is the suit under § 3730(h) timely? Section 3731(b)(1) allows six years to file suit under § 3730 from "the date on which the violation of § 3729 is committed". Section 3729 deals with making false claims. Neal filed this suit under § 3730 within six years of Honeywell's false claims. It is therefore timely.

How absurd!, Honeywell rejoins, to read the statute so that the time to file suit may expire before the retaliation occurs. If a firm submits a false claim early in 1991, an employee discovers the falsity in 1995, and the employer fires the whistleblower late in 1997, a suit under § 3730(h) would be untimely. Ever-solicitous of its ex-employees' right to sue it, Honeywell contends that § 3731(b)(1) cannot sensibly be applied to § 3730(h), and that we should therefore turn to state law—which, Honeywell believes, supplies a term of five years from the retaliation. Neal waited too long and must lose, Honeywell submits. Unlike Honeywell, however, we find no absurdity in the statute. Statutes of repose, increasingly common in tort cases, have the potential to block litigation before the tort occurs. Suppose the law bars suits filed more than ten years after the product's delivery. Then a person injured by a defect ten years and a day after sale lacks a remedy. The statutes of repose in federal securities laws may expire before a person discovers the fraud. See *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). If § 3731(b)(1) is another exhibit in this list, that would not condemn it as absurd. It would show only that Congress has opted for simplicity of administration. (It is easier to determine the date of a false claim than to pin down the time of retaliatory acts; the claim is a document, but arguments about retaliation depend on oral exchanges and are subject to failure of memory as well as the risk of prevarication.) In most cases, of which this is an example, the false claims, the reports, and the retaliation will occur close in time, so starting the period of limitations with the false claim rather than the retaliation will leave employees ample time to pro-

tect their rights. Claims of employment discrimination under labor and civil rights laws must be made in less than a year. See, e.g., *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Smith v. Chicago*, 769 F.2d 408 (7th Cir.1985); 42 U.S.C. § 2000e–5(e). Whistleblowers are likely to have much more than that, as Neal did. It is possible, moreover, that equitable tolling or estoppel would apply to § 3731(b)(1) if the firm patiently waited until six years from the false claim and then sacked the troublesome employee. Cf. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir.1990); *Davidson v. Western Illinois University*, 920 F.2d 441 (7th Cir.1990). We need not answer that question. All we need decide is that § 3731(b)(1) supplies a six-year period of limitations, which makes this suit timely.

AFFIRMED.