**UNITED STATES of America, ex rel. John FALLON, Robert Bradley, Jr., Pamela Carr, Kris Sheridan, Kelly Fallon and Atlantic States Legal Foundation, Relators/Plaintiffs,**

v.

**ACCUDYNE CORPORATION and Alliant Techsystems, Inc., Defendants.**

No. 93–C–801–S.

United States District Court,
W.D. Wisconsin.

March 10, 1995.

---

Mark A. Cameli, Asst. U.S. Atty., Madison, WI, for the U.S.

Dennis M. Grzezinski, Milwaukee, WI, for John Fallon, Kris Sheridan, Kelly Fallon, Atlantic States Legal Foundation.

Sandra J. Strebel, Speigel & McDiarmid, Washington, DC, for Robert Bradley Jr.

Bradley S. Weiss, Washington, DC, for Pamela Carr.

E. Grey Lewis, McDermott, Will & Emery, Washington, DC, for Accudyne Corp. and Alliant Techsystems, Inc.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Relators John Fallon, Robert Bradley, Jr., Pamela Carr, Kris Sheridan, Kelly Fallon and Atlantic States Legal Foundation commenced this action on behalf of the United States pursuant 31 U.S.C. § 3730(b) alleging that defendants knowingly made false claims for contract payments in violation of 31 U.S.C. § 3729(a)(1), (2) and (3). The matter is presently before the Court on defendants motion to dismiss one of plaintiffs' claims.

A complaint should be dismissed for failure to state a claim only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In order to survive a challenge under Rule 12(b)(6) a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984).

## FACTS

The following is a summary of the relevant allegations of relators second amended complaint which are accepted as true for purposes of this motion.

Accudyne is and has been party to numerous contracts with the United States Department of Defense. Each such contract included a requirement that all work be performed in accordance with applicable federal, state and local environmental laws and regulations including the Clean Water Act, the Clean Air Act and the Resource Conservation and Recovery Act.

To obtain the contracts Accudyne submitted pricing information to the United States Department of Defense which falsely represented that Accudyne's cost to complete the contracts for which it bid would include all costs associated with environmental compliance. After being awarded the contracts Accudyne knowingly failed to comply with environmental requirements while performing them.

Accudyne then knowingly presented false representations, certifications and claims that it complied with the contractually incorporated environmental regulations in order to induce payment under the contracts. The Department of Defense relied upon the false representations and paid the contract claims.

### MEMORANDUM

Defendants characterize relators claim as an effort to impose liability based solely on noncompliance with environmental statutes. This, they argue is not a claim within the language of the False Claims Act. Alternatively, to the extent that relators do state a claim defendants argue that it is pre-empted by the more specific remedial provisions of the environmental laws under the doctrine set forth in *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Because the Court concludes that relators' allegations clearly fall within the language of the FCA and that the *Sea Clammers* doctrine is inapplicable to the facts of this case, the motion to dismiss must be denied.

*Scope of the FCA*

■ The broad objective of the False Claims Act is to provide a remedy for all fraudulent attempts to cause the government to pay sums of money. *United States v.*

*Neifert–White Co.,* 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968). It provides in relevant part at 31 U.S.C. § 3729(a):

Any person who—

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government;

(3) conspires to defraud the government by getting a false or fraudulent claim allowed or paid; ...

is liable to the United States government for a civil penalty of not less than $5000 and not more than $10,000 plus three times the amount damages which the government sustained because of the act of that person....

The allegations of the second amended complaint unquestionably fall within this language. The complaint alleges that the contracts expressly required compliance with environmental regulations and that defendant knowingly failed to comply with such regulations and falsely certified that it had so complied in order to induce payments under the contracts. Such a claim is fundamentally no different than falsely representing that tests have been performed or falsely representing the results of product testing. *See, e.g. Neal v. Honeywell Inc.,* 33 F.3d 860 (7th Cir.1994). Defendants' characterization of the claim as an attempt to sue for violations of environmental laws misses the point—it is not the violation of environmental laws that gives rise to an FCA claim but the false representations to the government that there has been compliance.

■ Defendants rely upon dicta in *Neal* discussing costs to the government which might result from a proliferation of FCA retaliation actions. In so doing, defendants ignore the more fundamental principle at the heart of *Neal:*

But the Supreme Court insists that we take statutes seriously, bending their lan-

guage only when the text produces absurd results.

    *     *     *     *     *     *

The text of the law is not just evidence about how much one interest ... should be preferred over another; the text is the *decision* about what to do—a decision approved by the Constitution's own means, bi-cameral approval and presidential signature. No principle of statutory construction says that after identifying the statutes accommodation of competing interests, the Court should give a favored party a little extra.

33 F.3d at 862. As *Neal* recognizes, arguments concerning policy are irrelevant when a court is faced with the application of a clearly written statute. The allegations of false statements to induce payment by the government unquestionably state a claim within the language of the FCA.

### Pre-emptive effect of environmental laws

■ Notwithstanding that a claim falls within the literal reading of a statute, it is sometimes held to be unavailable because another more detailed statute evidences Congressional intent to pre-empt the more general claim which relates to conduct for which the other statute provides a detailed remedy. *Sea Clammers,* 453 U.S. at 19–21, 101 S.Ct. at 2625–27; *Brown v. General Services Administration,* 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976).

■ But neither *Brown* nor *Sea Clammers* hold that a statutory claim is pre-empted by a subsequent statutory enactment which regulates conduct different from that supporting the original claim. Both *Brown* and *Sea Clammers* held that a section 1983 action could not be maintained where another statute provided detailed remedies for the same underlying conduct. This analysis is powerful when applied to a claim under section 1983 because it is not a source of substantive rights but merely provides a method for vindicating federal rights conferred by other statutes. *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). Since Congress devised a detailed remedial scheme under the environmental laws, it logically follows that Con-

gress did not intend a litigant to circumvent those detailed remedies by the mere expedient of commencing a general claim for the same violations under section 1983.

This reasoning cannot readily be extended to the present case because the FCA and environmental statutes provide remedies for entirely different conduct. The first is a remedy for defrauding the government, the second for polluting. It can hardly be inferred that Congress intended to deprive the United States of a remedy for contract fraud by creating a remedy for environmental degradation. The absurd implication of such reasoning is that Congress authorizes suits for fraud on the government where a contractor lies about lawful actions but precludes actions for lies concerning unlawful actions.

Furthermore, the remedies for the two actions are entirely different. An action under the FCA cannot compel an environmental clean-up or yield damages for environmental contamination. Neither can a suit under federal environmental statutes obtain fraud damages or statutory penalties for defrauding the government. Both the actions that give rise to the claims and the remedies they provide are distinct.

The *Sea Clammers* doctrine logically applies to preclude claims based upon fraudulent federal income tax filings. Since such fraud is directly addressed and remedied by the Internal Revenue Code it follows that Congress would not intend to duplicate those remedies with an FCA claim arising from the identical conduct. Not surprisingly, such claims are now expressly excluded from application of the FCA. 31 U.S.C. § 3729(e). For the obvious reasons stated herein, Congress did not extend such an exclusion to environmental or other claims which provide remedies for proscribed conduct other than fraud on the government.

Courts have been generally reluctant to find pre-emption of the False Claims Act even where other laws provide closely related regulation and remedies. In *United States v. General Dynamics Corp.,* 19 F.3d 770 (2nd Cir.1994) the Court reversed a District Court ruling that the Anti Kickback Act pre-empt-

ed claims under the FCA. The Court began by noting:

"The ruling in *[Connecticut National Bank v.]* Germain [503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ] is consistent with well established jurisprudence that strongly disfavors pre-emption of federal statutory law by another federal statute absent expressed manifestations of a pre-emptive intent. It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored."

*Id.* at 774. Accordingly, although the receipt of kickbacks addressed by the AKA was precisely the conduct which supported the FCA claim, the Court rejected a claim of pre-emption noting that other courts "have allowed the United States to seek recovery for kickbacks under the FCA or common law, without finding any preclusion of these remedies by the AKA." *Id.* at 776.

Similarly, in *United States v. Foster Wheeler Corp.*, 447 F.2d 100 (2nd Cir.1971), the Court rejected an argument that the Federal Truth in Negotiation Act pre-empted an FCA claim based on inflated cost estimates. The Court noted there was no inconsistency in permitting remedies for fraud on the one hand and inaccurate, incomplete or noncurrent data on the other. Surely it is even more clear that there is no inconsistency in permitting remedies for fraud on the one hand and violation of federal environmental statutes on the other.

The allegations of the complaint fall within the plain language of the FCA and the *Sea Clammers* doctrine is inapplicable.

Accordingly,

### ORDER

IT IS ORDERED that defendants motion to dismiss is DENIED.