**Leray HAYNES, Plaintiff–Appellant,**

v.

**ALLIANT FOOD SERVICE, INC.,
Defendant–Appellee.**

No. 03–2714.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 3, 2004.*

Decided Feb. 3, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Leray Haynes, Milwaukee, WI, pro se.

Edward C. Jepson, Jr., Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

### ORDER

Leray Haynes worked as a delivery driver for Alliant Foodservice, Inc., until he was fired in 1999, ostensibly for disseminating false information about the company and failing to take a drug test after he was injured on the job. Haynes, who is black, brought suit alleging that his race and past administrative charges of discrimination were the real reasons for his termination. A magistrate judge, *see* 28 U.S.C. § 636(c), granted summary judgment to Alliant after concluding that Haynes had not established a prima facie case of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* We affirm.

The following facts were undisputed in the district court. Haynes was the source of three documents that attracted increasing attention from his superiors. The first was an April 1999 letter he wrote to management accusing the company and its employees of racism and voicing concern that management was trying to get him fired. Alliant replied that his allegations were unfounded but urged Haynes to relay any specific concerns to management or, if appropriate, alert his union or the EEOC. Alliant also warned Haynes that spreading defamatory statements could result in legal action and job discipline, possibly including termination. The second document, another Haynes letter captioned "The Price of Racism" that was found in the employee break room in September 1999, threatened to expose company-wide racism and "price skimming" by Alliant. The letter alleged that Alliant was charging some customers more than others for the same products, and that Alliant sales representatives were skimming off the profits brought in by this practice. In return for keeping the allegations quiet, Haynes demanded an apology and $20,-000–the same amount Haynes lost in legal fees when he sued Alliant (unsuccessfully) a few years before. A "cc" line indicated that customers on Haynes's delivery route had been copied with the letter, which included Haynes's telephone number and invited callers to find out how they could protect themselves from Alliant's purported fraud. When this letter came to light, management met with Haynes and suspended him pending an investigation. Six days later Haynes sent a third document to management, this time a newspaper article reporting on the bad press another company had encountered after suing two employees responsible for comments the company thought defamatory. In margin notes Haynes threatened that after two days he would go to his customers and expose the "truth" unless the company was willing to settle "with a hand shake" and $100,000. Alliant instead wrote Haynes that he was fired, both because of his written communications and his "insubordinate" failure to submit to mandatory drug testing after a job-related injury that coincidentally had occurred the day of his suspension.

At summary judgment Haynes offered no evidence of race discrimination or retaliation under the direct method, so he

was relegated to proving his claims through the indirect method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir.2002); *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 531 (7th Cir.2003). But the magistrate judge viewed his case as deficient on several fronts, chief among them that a worker who spreads harmful information about his employer–in particular after having been told to stop–cannot possibly have been meeting the employer's legitimate expectations. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545–46 (7th Cir.2002); *Peele*, 288 F.3d at 328. We agree, at least in situations like this one where the employee's allegations of fraud lack any reasonable factual basis. While an employer could not legitimately expect an employee to keep quiet about fraud within the company that he has discovered in the course of his employment, *see Neal v. Honeywell, Inc.*, 33 F.3d 860, 863 (7th Cir.1994), an employer can expect employees to keep confidential price lists and business arrangements that are neither fraudulent nor illegal, *see NLRB v. Elec. Workers Local 1229*, 346 U.S. 464, 475, 74 S.Ct. 172, 98 L.Ed. 195 (1953); *NLRB v. Knuth Bros., Inc.*, 537 F.2d 950, 955–57 (7th Cir.1976). Here what Haynes alleged was a "price-skimming" conspiracy was actually price discrimination, a common practice in competitive industries which is not unlawful (absent market power or collusion). *See In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d 1028, 1031 (7th Cir.2002). So Haynes did not blow the whistle on corporate fraud; all he did was threaten to reveal information that Alliant legitimately expected him to keep confidential. *Cf. Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir.2003) ("We do not question that Appelbaum's [breach of confidentiality] would suffice as a nondiscriminatory rea-

son for her discharge."). And Haynes did so with an extortionist motive, which undermines the sincerity of his allegations. *Cf. Neal*, 33 F.3d at 863 ("Some employees will cry 'fraud' to make pests of themselves, in the hope of being bought out with higher salaries or more desirable assignments."). Alliant had a right to expect Haynes to remain loyal and keep its proprietary information confidential. *See Knuth Bros.*, 537 F.2d at 954 ("[T]here is no more elemental cause for discharge of an employee than disloyalty to his employer."). Alliant asked Haynes to stop his campaign against the company, which Haynes refused to do, and on this basis Alliant was justified in firing him. *See Kahn v. U.S. Secretary of Labor*, 64 F.3d 271, 279 (7th Cir.1995) ("We have consistently held that an employee's insubordination ... is justification for termination."). Thus we need not inquire further into Alliant's motives to look for pretext, as Haynes urges. *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997) (holding that where plaintiff was not performing up to defendant's legitimate expectations, "the factfinder should not be allowed to speculate on the motive for termination"); *see also Haywood*, 323 F.3d at 531.

■ Still, adds Haynes, the magistrate judge hampered his presentation by refusing to compel Alliant to turn over documents proving that his allegations of fraud were false, as well as records pertinent to the company's post-accident drug testing policy. But Haynes complains about rulings on motions that were filed after the close of discovery and denied for that reason. We review a refusal to compel additional discovery only for abuse of discretion and will not find error unless the court's decision resulted in "actual and substantial prejudice." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 319 (7th Cir.2003) (citation omitted). And rarely will we find

an abuse of discretion when the motion to compel came after the close of discovery. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir.2001).

That aside, the court's ruling could not have prejudiced Haynes. Alliant never denied that it practiced price discrimination, and it need not have done any more in discovery to show Haynes that his allegations of a "price-fixing" conspiracy were false. Alliant did not have to produce its legal conclusions, just the facts underlying those conclusions. *See Rhone–Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir.1994). And because Alliant was justified in firing Haynes for threatening to disseminate false allegations, any evidence about Alliant's drug-testing policy was irrelevant. *See Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002) ("Where an employer offers multiple independently sufficient justifications for an adverse employment action, the plaintiff must cast doubt on each of them.").

AFFIRMED.