In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-1515

SHARON LANG,

*Plaintiff-Appellant,*

*v.*

NORTHWESTERN UNIVERSITY and
NORTHWESTERN MEDICAL
FACULTY FOUNDATION,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 3290—**Matthew F. Kennelly**, *Judge.*

---

ARGUED SEPTEMBER 22, 2006—DECIDED DECEMBER 28, 2006

---

Before EASTERBROOK, *Chief Judge*, and KANNE and
SYKES, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Sharon Lang called the
FBI to proclaim that executives of the Northwestern
Medical Faculty Foundation were lying to the Federal
Reserve in order to obtain a "gold bond rating" plus a
federal loan on easy terms. The FBI was unimpressed—if
only because the Fed does not extend credit to private
foundations or rate their bonds. Lang's story had been
based on nothing other than office gossip, apparently
having its genesis in stories in *Crain's Chicago Business*

relating that the Foundation was burdened by debt. From this tidbit, the office scuttlebutt leapt to federal bail-outs secured by fraud. Yet neither Lang nor anyone who passed the gossip on to her knew about any concrete false statement made to the Federal Reserve or any other federal agency, and neither a federal prosecution nor a *qui tam* action under the False Claims Act, 31 U.S.C. §3730, ensued.

What did occur is that Lang lost her job. She maintains that the Foundation retaliated against her for speaking to the FBI; the Foundation responds that Lang was laid off when the grant that paid for her position ended. Lang's belief that she is a victim of retaliation, the Foundation insists, has no better grounding than her report to the FBI. The district court did not resolve this dispute. Instead it assumed that the Foundation had considered Lang's report and held that doing this did not offend 31 U.S.C. §3730(h), which gives employees a civil remedy should retaliation occur on account of "lawful acts done by the employee on behalf of the employee or others in further-ance of an action under this section, including investiga-tion for, initiation of, testimony for, or assistance in an action filed or to be filed under this section". "This section" is §3730, which deals with fraudulent claims submitted to federal agencies. There was no "action filed or to be filed under" the False Claims Act, the judge observed, so there could be no remedy under §3730(h). 2006 U.S. Dist. LEXIS 8549 (N.D. Ill. Feb. 13, 2006).

The other defendant, Northwestern University, con-tends that it was Lang's employer and that it had no reason to discourage anyone from reporting potential fraud at the Foundation. Although the Foundation is an organization of physicians who serve on the faculty of Northwestern's Feinberg School of Medicine or work at Northwestern Memorial Hospital, both the Foundation and the University insist that the organizations operate

independently. The district court indulged the assumption that Northwestern and the Foundation were joint employers, but this did Lang no good: once the Foundation prevailed, the University won automatically. For convenience, we disregard the University's role.

Section 3730(h) protects employees who are investigating claims "to be filed," and we held in *Neal v. Honeywell Inc.*, 33 F.3d 860 (7th Cir. 1994), that the statute covers investigations that, although reasonable in prospect, do not pan out and thus do not lead to actions under the False Claims Act. "The statute expressly covers investigatory activities preceding litigation." 33 F.3d at 864. *Neal* concluded that litigation need not ensue for this protection to continue. But we added that the statute "limits coverage to situations in which litigation could be filed legitimately—that is, consistently with Fed. R. Civ. P. 11. Then an employee who fabricates a tale of fraud to extract concessions from the employer, or who just imagines fraud but lacks proof, legitimately may be sacked. No action is 'to be filed' in either case, and employees who use reports of fraud to better their own position, or who behave like Chicken Little, impose costs on employers without advancing any of the goals of the False Claims Act." 33 F.3d at 864. See also *Fanslow v. Chicago Manufacturing Center, Inc.*, 384 F.3d 469 (7th Cir. 2004).

The district court concluded that Lang had played the part of Chicken Little. She imagined fraud but lacked any objective basis for that belief; the people who fed her the rumors also lacked proof. There was no fire; there was not even smoke; there was just imagination run amok, and with no legitimate action "to be filed" no protection from §3730(h). That assessment is spot on. Lang may have been a thorn in management's side, but the statute is not designed to protect pests, who are more trouble than they are worth. The statute protects genuine private attorneys general from the sort of employers who do not take kindly to having their crimes nosed out.

Lang concedes that her beliefs lacked any footing other than the articles in *Crain's Chicago Business*, which do not hint at skullduggery. (Lang, a histologist, had no access to any of the Foundation's financial records.) *Crain's* observed that the Foundation had incurred about $87 million in debt to pay for a medical office building; as a result of the debt-service obligations it had begun to operate in the red, and morale had deteriorated. To say that "X is suffering under heavy debt" does not imply that X has committed fraud—or for that matter that X has violated the antitrust laws, robbed banks, perpetrated arson to collect insurance money, smuggled untaxed cigarettes into the state, or used any other illegal means to raise funds. Lang's beliefs were fantasies. The Federal Reserve does not rate bonds or extend credit to private foundations; Lang might as well have reported that the Foundation was trying to deceive the United Federation of Planets so that it would dispatch the Starship Enterprise to assist the Foundation with a delivery of 23d Century quatloos. If this comes within §3730(h), then the statute has no bounds and protects tall tales as well as legitimate investigations. *Neal* and *Fanslow* foreclose such a position.

Denouncing other persons as criminals—which is what Lang did—is serious business; considerable trouble and expense may be required to set things straight, if the stain ever can be erased. It was irresponsible to make such an accusation on no basis other than rumor that someone must be "cooking the books" to cope with what *Crain's* called "numbing debt." What Lang actually believed is irrelevant, for people believe the most fantastic things in perfect good faith; a kind heart but empty head is not enough. The right question is whether her belief had a reasonable objective basis, and sensible jurors could not find that it did. Section 3730(h) is not unique in this respect. Other anti-retaliation statutes, such as the one

in Title VII of the Civil Rights Act of 1964, see 42 U.S.C. §2000e-3(a), also are limited to the protection of objectively reasonable reports and do not prevent employers from discharging workers who enter fantastic realms. See *Clark County School District v. Breeden*, 532 U.S. 268 (2001); *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890-92 (7th Cir. 2004).

Illinois law likewise protects only objectively reasonable reports, so the district judge properly dismissed Lang's state-law claim of retaliatory discharge. State law protects employees whose reports of criminal activity are supported by probable cause. See *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 132-33, 421 N.E.2d 876, 880 (1981). Lang did not have probable cause to believe that anyone at the Foundation had committed a crime. Contrast *Brandon v. Anesthesia & Pain Management Associates*, 277 F.3d 936 (7th Cir. 2002), in which the employee (who had personal knowledge of overbilling) not only obtained corporate records establishing the existence of fraud but also verified with public officials that these documents had been used to obtain payments to which the employer was not entitled. Lang had nothing of the sort.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—12-28-06