# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-2977

DORIS S. APPELBAUM,

*Plaintiff-Appellee,*

*v.*

MILWAUKEE METROPOLITAN
SEWERAGE DISTRICT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 CV 366—**Thomas J. Curran**, *Judge.*

ARGUED MAY 13, 2002—DECIDED AUGUST 28, 2003

Before ROVNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Doris Appelbaum worked as a secretary for the Milwaukee Metropolitan Sewerage District ("MMSD") for fifteen years until she was discharged at age sixty. A jury found that the MMSD had fired her based on her age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 623(a)(1), 626 (the "ADEA"), and that it did so in wilful disregard of the ADEA's provisions, *see id.* § 626(b). MMSD appeals, contending the evidence was insufficient to support either the liability or the wilfulness determinations. We affirm.

**I.**

Appelbaum's employment with MMSD began in 1983. Beginning in 1991 and through the date of her termination, she was assigned to MMSD's Human Resources department. As of 1996, Appelbaum was one of three secretaries in that department. However, in August 1996, MMSD's number two official, Kristine Hinrichs, decided that the number of secretaries in the department should be reduced from three to two. She made this decision pursuant to a reduction in force and partial privatization of MMSD's operations that eventually would reduce its overall workforce from a total of between 600 and 700 employees down to 200.

Of the three secretaries in the Human Resources Department, Hinrichs selected Appelbaum for layoff. In choosing Appelbaum, Hinrichs rejected the advice of department managers, who felt that she should instead lay off a younger (in her late thirties) employee, Cassandra Reynolds-Taylor, whose work was regarded as poor. Originally, Appelbaum was to be laid off effective January 1, 1997, but that date subsequently was extended to July 1, 1997, so that Appelbaum, who in July turned sixty, could retire with full pension benefits.

Ultimately, Appelbaum's job was saved when one of the other secretaries in the department resigned in February 1997, obviating the need for a layoff. The following month, Don Schriefer became the new Manager of Human Resources. In the five years prior to that appointment, Schriefer had worked for MMSD as a labor and employment lawyer. Shortly after he took over the Human Resources department, Schriefer fired Reynolds-Taylor based on repeated complaints about her performance; Schriefer would later describe her work as "[p]retty egregious." R. 65 at 247. "Almost everything that she did was done erroneously or wrong or not done at all."

*Id.* The discharge of Reynolds-Taylor left Appelbaum as the only secretary in the department, with a heavy workload.

For obvious reasons, employees of the Human Resources department were obligated to keep in confidence the private information regarding other MMSD employees with whom they dealt in the course of their work. The importance of maintaining confidentiality was something that Schriefer stressed to employees of the department on more than one occasion. Schriefer informed the staff that any breach of that confidentiality would result in termination. Despite Schriefer's warnings, confidential information was leaked from the Human Resources department on a number of occasions during his tenure as Manager. On one occasion, for example, Schriefer met with a temporary MMSD employee to inform her that her employment contract was being terminated. Before he could break the news, the employee revealed that she already knew she was going to be fired. She told Schriefer that she had a "secret friend" at MMSD who had learned of the termination decision from someone in the Human Resources department. R. 65 at 224-25. (Schriefer previously had discussed the decision to discharge this employee with other members of the department.) In the wake of this incident, Schriefer again admonished his staff about the importance of confidentiality and reminded them that any leak of confidential information would result in discharge of the offending employee.

Not long after this incident, Schriefer imposed a five-day disciplinary suspension on Trina DeLeon, an employee in his department, for what he believed to be insubordinate behavior. DeLeon had ordered Schriefer out of her office when he attempted to question her about a

leak of confidential information.[1] DeLeon subsequently became aware that word was out among MMSD staff about her suspension and complained to Schriefer. Schriefer commenced an investigation to determine who had disclosed the information, and as part of that investigation he interviewed all of the employees in his department.

When Schriefer spoke with Appelbaum, she revealed that one day when she was on her way to the washroom, an MMSD employee by the name of Sheila Ashley had stopped Appelbaum and asked whether she had heard about DeLeon's suspension. Appelbaum responded to Ashley, "[Y]es, I heard," and added that she was not at liberty to discuss the matter; Appelbaum suggested that she address any questions to DeLeon herself. R. 65 at 54. Schriefer construed Appelbaum's remarks to Ashley as a leak of confidential information, and he decided to fire Appelbaum for the transgression.

Schriefer believed that Appelbaum's discharge was warranted on a second ground: her work performance. Appelbaum's work had been rated satisfactory or better throughout the bulk of her tenure with MMSD, and she had received a number of merit-based increases in her salary. But early in 1997, Schriefer's predecessor in the Human Resources department had prepared a review for 1996 indicating that Appelbaum's work needed improvement in certain areas. In Schriefer's view, Appelbaum's performance had not changed for the better in 1997. He decided to fire her on this basis as well.

---

[1] Apparently, someone had informed DeLeon of another employee's intent to resign from MMSD's employ. When Schriefer learned that DeLeon had come into possession of this information, he demanded that DeLeon tell him what she knew. DeLeon took umbrage at Schriefer's manner and refused to tell him anything. R. 65 at 148-49, 157-58, 227, 240.

Schriefer subsequently met with Appelbaum and advised her of his intent to discharge her. He offered Appelbaum a separation agreement pursuant to which MMSD would supply a neutral letter of reference to prospective employers and Appelbaum in turn would waive any claims she might have under the ADEA. Schriefer advised Appelbaum that if she did not accept MMSD's offer, he would fire her. He gave her several weeks to consider the offer. Appelbaum ultimately declined the offer.

Upon learning that Appelbaum had rejected the separation agreement, Schriefer on January 21, 1998, sent her a Notice of Contemplated Discipline formally advising her of his decision to terminate her employment. Schriefer's memorandum indicated that his decision was based on her work performance as well as her breach of confidentiality. On the subject of her work quality, Schriefer advised Appelbaum that he had "received complaints this year about your performance from every staff member, as well as from both temporary workers we employed this year." R. 25 Ex. E-1, Notice of Contemplated Discipline at 2.

Appelbaum prepared a written response to Schriefer's memorandum challenging both of the reasons he had given for her termination. Apropos of her work, Appelbaum noted that she had not been notified of her co-workers' complaints, had not been given the chance to respond to them, and had not been advised as to how MMSD expected her to correct the complained-of deficiencies. She also noted that Schriefer had failed to conduct a midyear review of her work in 1997 as a follow-up to her negative 1996 review, as Schriefer had promised he would do. R. 25 Ex. A-5 at 2-3, 5-6.

In a February 17, 1998 written reply to Appelbaum, Schriefer agreed that it would be inappropriate to terminate her solely on the basis of her work performance, in

view of the concerns she had raised. Nonetheless, Schriefer went on, Appelbaum's breach of department confidentiality was an offense that required her termination. "[Y]our performance problems are presently relevant to me only because they constitute a background that, to my mind, aggravates rather than mitigates my view of this offense." R. 25 Ex. E-2 at 2.

Appelbaum unsuccessfully appealed the termination decision through MMSD's internal grievance procedure. Mike McCabe, MMSD's chief of legal services, conducted a hearing at which both Appelbaum and MMSD presented evidence. McCabe subsequently issued a written decision sustaining Schriefer's decision to discharge Appelbaum. In that decision, McCabe described the standard of review he applied as "whether the supervisor's action was within the reasonable range of alternatives which the supervisor might have taken under the circumstances." R. 22, McCabe Decision at 6. Applying that standard, McCabe determined that Schriefer's decision was justified based on Appelbaum's poor performance as well as her breach of confidentiality. His decision ended with the following "Conclusion":

> On the facts as I have found them to be in the context of what, at best, can be termed very poor performance in 1997 and poor performance in 1996, I believe termination was within the reasonable range of alternatives which Mr. Schriefer faced. It is, therefore, my determination that his action in terminating Doris Appelbaum be upheld.

*Id.* With her termination final, Appelbaum retired. Although, having attained the age of sixty, Appelbaum was entitled to full retirement benefits, the monthly pension payment that she received was less than it would have been had she continued working until age sixty-five, as was her plan.

Appelbaum then sued MMSD for age discrimination in the district court, and the case proceeded to trial. At trial, Schriefer testified that after initially notifying Appelbaum that she was being fired both for breaching confidentiality and for poor work, he had concluded that he could not rely on her performance as a basis for her discharge because he had never followed up on the prior review citing her for substandard work in 1996. R. 65 at 237-38. Ultimately, he testified, Appelbaum's performance played "zero role" in her termination. *Id.* at 237, 253-54. When confronted with his memorandum of February 17, 1998 to Appelbaum, in which Appelbaum's performance was still cited as an aggravating factor in the discharge decision, Schriefer explained that had Appelbaum's work been exemplary, he would have considered it as a factor weighing against her discharge, although he still would have been hard-pressed not to fire her for the confidentiality breach. *Id.* at 254.

After hearing the evidence, the jury found in Appelbaum's favor. On a special verdict form, the jury indicated that age had been a motivating factor in MMSD's decision to fire her, that she would have worked another fifty three months beyond her discharge date, and that her lost wages totaled $115,000. R. 73 at 1-2. The jury also found that MMSD either knew that its decision to fire Appelbaum was contrary to the ADEA or acted with reckless disregard for that possibility—thus rendering MMSD liable for a wilful violation of the statute. *Id.* at 2; *see* 29 U.S.C. § 626(b). Based on the jury's findings, the district court awarded Appelbaum back pay of $87,660, front pay of $27,340 (conditioned on MMSD's inability to reinstate her)—for a total of $115,000 in lost wages—and an additional $87,660 in liquidated damages for MMSD's wilful violation of the ADEA, yielding a total award of $202,660. R. 75, 76.

During trial, at the close of evidence, MMSD had moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), and the district court had denied that motion. R. 50. Following the adverse verdict, MMSD renewed its motion pursuant to Rule 50(b), contending that there was insufficient evidence from which the jury could have found that Appelbaum's age was a motivating factor in her discharge. R. 54. The court again denied the motion. In its written decision, the court agreed that "the evidence of age discrimination received at Appelbaum's trial was thin." R. 75 at 2. Nonetheless, Appelbaum had adequately established a prima facie case of discrimination, *id.* at 2-3; she had also produced evidence that MMSD's articulated reason for her discharge (breach of confidentiality) was pretextual, *id.* at 3. The jury had agreed with Appelbaum that MMSD's stated reason for firing her was a pretext for age discrimination, *id.*, and the court found the evidence sufficient to support that determination, *id.* at 4.

From the denial of its motion for judgment as a matter of law, MMSD appeals.

## II.

We review de novo the district court's decision to deny MMSD's Rule 50 motion for judgment as a matter of law. In conducting that review, we apply the same standard that the district court did. The standard governing a Rule 50 motion mirrors that employed in evaluating a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000). Looking to "all of the evidence in the record," *ibid.*, we must ask whether any reasonable jury could have found that MMSD terminated Appelbaum because of her age, *E.E.O.C. v. Bd. of Regents of Univ. of Wisconsin Sys.*, 288 F.3d 296, 301 (7th Cir. 2002) and, if so, that it did so wilfully, *id.* at 304. In undertaking this review, we must

construe the evidentiary record in Appelbaum's favor, drawing all reasonable inferences in her favor and resisting temptation to weigh the evidence or to make our own credibility determinations. *Reeves*, 530 U.S. at 150-51, 120 S. Ct. at 2110.

**A.**

MMSD claims to have fired Appelbaum for breaching the confidentiality of its Human Resources department, and the question that the jury had to decide was whether this was the real reason for the discharge or instead was a pretext for age discrimination. As Appelbaum suggests, the evidence as to her asserted breach of confidentiality is ambiguous. When asked whether she had heard about DeLeon's suspension, Appelbaum said that she had. Arguably, Appelbaum's response simply confirmed that she had heard the same rumor that prompted the inquiry, without either validating the rumor or disclosing any of the confidential information within her knowledge about DeLeon's suspension. Nonetheless, we do not question that Appelbaum's conduct would suffice as a nondiscriminatory reason for her discharge. We are not, after all, a super-personnel department that sits in judgment of the wisdom of an employer's employment decisions. *E.g.*, *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). Rather, our sole task is to decide whether evidence permitted the jury to conclude that Appelbaum's breach of confidentiality was not the true reason for her termination. *E.g.*, *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003). If it was not, then the jury was entitled to infer that MMSD used the confidentiality breach as a cloak for age discrimination. *Reeves*, 530 U.S. at 147-48, 120 S. Ct. at 2108-09.

Looking to the record, we find the evidence more than sufficient to support the jury's determination that

MMSD terminated Appelbaum based on her age rather than any breach of confidentiality she may have committed. Without undertaking to identify all of the evidence that supports the jury's finding, we note the following three circumstances.

When he first advised Appelbaum of his decision to fire her, Schriefer indicated that she was being discharged for both her allegedly poor performance and for the confidentiality breach. He later backed off somewhat from the performance rationale in response to the concerns Appelbaum raised about his failure to follow through on her purported deficiencies. But in his February 17, 1998, memorandum to Appelbaum, Schriefer still cited her performance as an aggravating factor in his decision, as he did at the disciplinary review hearing before McCabe. Indeed, McCabe himself sustained the discharge decision on the basis of Appelbaum's work performance as well as the confidentiality breach. At trial, however, not only did MMSD abandon the charge of poor work performance, but Schriefer went so far as to say it played "zero role" in Appelbaum's termination. R. 65 at 237. That assertion represents a departure from the rationale that Schriefer and MMSD previously had articulated for Appelbaum's discharge. One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision. *E.g.*, *Zaccagnini v. Chas. Levy Circulating Co.*, 2003 WL 21741636, at *5 (7th Cir. July 29, 2003); *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 931-32 & n.13 (7th Cir. 2001); *Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1422 (7th Cir. 1992).[2]

---

[2] The jury also could have questioned the sincerity of Schriefer's professed concerns about the quality of Appelbaum's work. Although Schriefer's January 28, 1998, memorandum to Appel-

(continued...)

Moreover, pursuant to the reduction in force, MMSD had previously made a decision to lay off Appelbaum rather than the younger Reynolds-Taylor, notwithstanding glaring problems with Reynolds-Taylor's performance (problems that would soon culminate in Schriefer's decision to fire her) and the recommendations of MMSD's own managers that Reynolds-Taylor be the one laid off. Only the unexpected departure of the department's third secretary had saved Appelbaum's job on that occasion. The fact that MMSD had chosen to lay off someone on the verge of retirement eligibility rather than someone substantially younger and so evidently less qualified supports the inference that its decision-making (at least as to Appelbaum) was tainted by considerations of age, and along with the other circumstances supports the inference that she was later discharged based on her age. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S. Ct. 1885, 1889 (1997); *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1295 (7th Cir. 1987); *Mathewson v. Nat'l Automatic Tool Co.*, 807 F.2d 87, 91 (7th Cir. 1986). MMSD retorts that the layoff decision was not made by Schriefer but by Kristine Hinrichs and for that reason is wholly irrelevant to the discharge decision. Schriefer, however, not only reported to Hinrichs but consulted her in decid-

---

[2] (...continued)
baum asserted that he had "received complaints this year about your performance from every staff member" in the Human Resources department, R. 25 Ex. E-1, Notice of Contemplated Discipline at 2, two of those employees—Glinda Loving and Trina DeLeon—testified that they had not complained to Schriefer about Appelbaum's work and, in fact, had never been asked about her work in 1997, R. 65 at 146-47, 172, 174. Although MMSD's attorney challenged the credibility of these witnesses, the jury could have believed their testimony and determined, as a result, that Schriefer was misrepresenting the degree if not the fact of departmental discontent with Appelbaum's work.

ing to fire Appelbaum. Consequently, the jury was entitled to take the prior layoff decision into account when it assessed the reasons for Appelbaum's discharge.[3]

Finally, the jury also could have inferred pretext from the disparate way in which Schriefer had disciplined Appelbaum as compared to DeLeon. Disparate discipline of an employee who is situated similarly to the plaintiff but is outside of the protected class may support an inference of age discrimination. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). "Such a showing normally entails establishing that 'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Snipes v. Illinois Dep't of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002), quoting *Radue* at 617-18. DeLeon and Appelbaum worked in the same department, were both supervised and ultimately disciplined by Schriefer, and were subject to the same standards vis-à-vis confidentiality and insubordination. Recall that Schriefer decided on a sanction short of discharge for DeLeon after he attempted to question her about a leak of information from the Human Resources department—DeLeon not only had refused to answer Schriefer's questions, but had ordered him out of her office. Schriefer decided to suspend her for five days. DeLeon's offense, of course, was one of insubordination rather than breach of confiden-

---

[3] The lapse of time between the layoff decision and the discharge decision may detract from the weight of the evidence concerning the earlier decision, *see Huff v. UARCO, Inc.*, 122 F.3d 374, 386 (7th Cir. 1997); but, nonetheless, we believe that the jury was entitled to attach some significance to the fact that MMSD had previously chosen to lay off Appelbaum rather than her younger, clearly less-qualified colleague.

tiality; and short of striking one's supervisor, it was unheard of for a first act of insubordination to result in discharge from MMSD's employ. Grave as one might view insubordinate conduct such as DeLeon's, one nonetheless could view it as less serious than a breach of confidentiality by a Human Resources employee, an act which could injure an employee about whom private information was disclosed and undermine confidence in the Human Resources department. Schriefer, in fact, had warned his staff prior to Appelbaum's discharge that a breach of confidentiality would result in termination. On the other hand, DeLeon's conduct arose from Schriefer's inquiry into just such a breach, and her refusal to cooperate with Schriefer could be seen to pose as much of a threat to the integrity of the Human Resources department as Appelbaum's inadvertent confirmation of a rumor. *Cf. In re Himmel*, 533 N.E.2d 790 (Ill. 1988) (suspending attorney from practice of law for his failure to report misconduct of another attorney). MMSD had never before had occasion to discipline Appelbaum for any rule infraction, nor had any Human Resources employee previously voiced a concern that Appelbaum had leaked or otherwise mishandled confidential information. The fact that she was fired for her breach of the department's confidentiality policy, while DeLeon was merely suspended for an insubordinate refusal to cooperate with the enforcement of that same policy, could be viewed as a disparate treatment of two similarly situated employees.

Both parties presented to the jury a version of events that was plausible: MMSD presented evidence that it fired Appelbaum for breaching departmental confidence, while Appelbaum presented evidence suggesting that MMSD's shifting rationale for her discharge may have been a cover for something else. The relevant facts were fully aired before the jury, and it fell to the jury to sort out which side's version was more likely true. As MMSD's lawyer argued to the jury in closing:

> If the facts were clear we wouldn't need a jury, and what [jurors are] for is to bring their human experience and their knowledge of people and life experiences and look into the eyes of the witnesses that have been up here on the stand and figure out who is telling the truth, because we don't all tell the truth all the time.

R. 86 at 13. Just so. The jury in this case resolved the credibility questions and competing inferences posed by the trial evidence in Appelbaum's favor, and we have no reason to disturb its assessment of the facts.

## B.

An employer commits a wilful violation of the ADEA, entitling the plaintiff to liquidated damages, when the employer knows that its conduct is prohibited by the statute or manifests reckless disregard for that possibility. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617, 113 S. Ct. 1701, 1710 (1993). By contrast, "[i]f an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed." *Id.* at 616, 113 S. Ct. at 1709, citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13, 108 S. Ct. 1677, 1682 n.13 (1988); *see also Bd. of Regents of Univ. of Wisconsin Sys.*, 288 F.3d at 304, citing *Wichmann v. Bd. of Trs. of S. Ill. Univ.*, 180 F.3d 791, 804 (7th Cir. 1999), *judgment vacated on other grounds*, 528 U.S. 1111, 120 S. Ct. 929 (2000). "As one might imagine, given the length of time the ADEA has been with us, a finding of nonreckless ignorance is rare." *Bd. of Regents* at 304.

MMSD's challenge to the wilfulness finding focuses on the identity of the person at MMSD responsible for Appelbaum's termination. MMSD does not quarrel with

the notion that Schriefer either knew or was recklessly indifferent to the possibility that the decision to discharge Appelbaum violated the ADEA. Indeed, that would be an extremely difficult argument for MMSD to make, given Schriefer's background as a labor and employment lawyer for MMSD. Instead, MMSD contends that the final decisionmaker with respect to Appelbaum's discharge was McCabe, who conducted the hearing on Appelbaum's grievance and sustained the discharge decision. There is no evidence that McCabe acted with the requisite knowledge or recklessness, MMSD argues, and without such proof, MMSD's decision to discharge Appelbaum cannot be characterized as wilful.

A pragmatic view of the facts makes plain that Schriefer was the pertinent decisionmaker, however. McCabe may have rendered the decision to discharge Appelbaum final and official in his role as the hearing examiner charged with resolving her internal protest of the discharge decision. But the person who actually made the decision to fire Appelbaum was Schriefer: he was the head of Appelbaum's department and her supervisor; he was the individual who investigated the leak about DeLeon's suspension and decided that Appelbaum's disclosure constituted a breach of department confidentiality; he was the individual who informed Appelbaum that she would be fired; and he was the person who modified the rationale for Appelbaum's discharge in response to the concerns that she raised. He was, in short, the person who "wielded the axe." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1401 (7th Cir. 1997). McCabe simply reviewed Schriefer's rationale and sustained it as reasonable; he did not actually make the decision to discharge Appelbaum or cause that decision to be made. Any doubt in that regard is resolved by McCabe's written decision, which expressly confined his review to "whether [Schriefer's] action was within the reasonable range of alternatives which

[Schriefer] might have taken under all the circumstances." R. 22, McCabe Decision at 6. In short, McCabe (on MMSD's behalf) deferred to Schriefer's judgment.

The jury was therefore free to impute Schriefer's mindset to MMSD. Because the jury was entitled to find on the evidence that Schriefer discharged Appelbaum based on her age knowing (or not caring) that such a decision was in violation of the ADEA, the wilfulness determination and award of liquidated damages were reasonable.

### III.

Because the record lends sufficient support to the jury's findings of liability and wilfulness, we AFFIRM the judgment.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*