In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3015

TIMOTHY L. RUNYON,

*Plaintiff-Appellant*,

*v.*

APPLIED EXTRUSION TECHNOLOGIES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:07-cv-0040-LJM-WGH—**Larry J. McKinney**, *Judge.*

ARGUED FEBRUARY 19, 2010—DECIDED AUGUST 30, 2010

Before POSNER, FLAUM, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Timothy L. Runyon worked for Applied Extrusion Technologies, Inc. ("Extrusion"), for about a year, from February 2005 until February 2006. Extrusion is a manufacturer of plastic film. Runyon worked in one of its Terre Haute plants as a support operator in the finishing area. From the start, he had a turbulent relationship with his co-workers. After several heated disputes, Extrusion decided to fire him.

Because it did not take similarly harsh action against a younger employee, Troy Corbett, even though Corbett had also misbehaved, Runyon concluded that the company had discriminated against him on the basis of his age and brought an action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. The case went to trial, but at the close of Runyon's case-in-chief, the district court granted judgment as a matter of law in Extrusion's favor. We have looked at the record *de novo*, and, like the district court, we can find no evidence that Extrusion's action was motivated by Runyon's age. See *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2352 (2009). We therefore affirm.

**I**

We recount the background facts in the light most favorable to Runyon. He began working for Extrusion on June 8, 2005, at the age of 45 through an assignment from Kelly Temporary Services. Runyon was hired to work as a support operator in the finishing area of the Tenter II plant. Extrusion hired Corbett in August 2005; he worked under the same chain of command as Runyon and had the same job title. In October 2005, both men began reporting to Rod Ellis; Ellis in turn reported to Don Hamilton.

Runyon had problems with his behavior on the job from the start. In August 2005, returning from a break, he saw co-worker Jennifer Luz-Reyes struggling to complete her work and spoke sharply to her. As Luz-Reyes reported the incident to Hamilton (and as Hamilton

recorded the conversation in his notes), Runyon had grabbed a pallet to sit on, and the pallet bumped the broom that Luz-Reyes was using to sweep the floor. Runyon yelled, "[G]et the f**king broom out of my way." A little later, when Luz-Reyes asked him not to shout, Runyon retorted, "[Y]ou haven't f**king heard me yell yet." Hamilton discussed this incident with Runyon, who denied cussing or yelling at Luz-Reyes. He did admit, however, that the two had words between them, but he said that everything was now all right. After confirming this with Luz-Reyes, Hamilton took no further action.

In January 2006, however, Runyon was in trouble again. On January 5, Runyon and co-worker John Willman had a heated argument. Two other co-workers, Russ Rutter and Jay Funkhouser, tried to calm them down, but Runyon told Funkhouser that he was "real close to tearing off [Willman's] f**king head and walking out of here," and that he "might kick his a**." Not amused, Funkhouser emailed Hamilton about the incident. Hamilton talked to both Runyon and Willman and prepared another note for the record. Runyon admitted that he told Hamilton that he was ready to quit and "lay [Willman] out when he does." He also blustered that he was "ready to knock [Willman's] head off and go outside and wait for County" (apparently referring to the local police).

Even this was not what prompted Runyon's firing. On February 15, 2006, the incident involving Runyon and the younger (age 30) Corbett erupted. The night before,

Runyon and another co-worker, Ian Gilbert, had been working hard to keep up with production on Line 4 and had asked for Corbett's help. Corbett was assigned to Line 5, which was not operating at that moment. Corbett, along with Willman and Mark Neukom, another employee, rebuffed the request. Word of their action made its way back to Ellis, who emailed them asking why they had not lent a hand.

The next night, Corbett confronted Runyon and complained that he, Willman, and Neukom had been written up because of Runyon's complaint. Runyon retorted that Corbett had been avoiding work during the entire evening. Later on, around 2:00 a.m., the two ran into each other and Runyon "congratulated" Corbett on how poorly he banded a roll of film. Corbett was angry; obscenity-laced shouting quickly gave way to physical fighting. Infuriated, Corbett at one point twisted Runyon's nipples and grabbed him by the armpits, briefly elevating him to his tip-toes. Runyon then called Ellis at home to let him know what had happened. Ellis came right in to investigate, and then gave a report to Hamilton.

Relying on Ellis's written report, Hamilton decided to give a Final Written Warning to Runyon and to suspend him from work for three days. Corbett received the same treatment. Hamilton also asked both men to write letters of apology and to deliver them to the management group. Because the texts of their letters figured in Extrusion's final decision, we set each one out here in full. Runyon's letter read as follows:

As requested by Mr. Hamilton I am writing this letter explaining why I should continue employment with A.E.T.

Since my employment began at A.E.T. I have never missed a schedule shift, or any on call's or mandatory over time. I have also followed our JSA's and our GQS. I am also committed to our statement "we will meet or exceed our customers quality expectations."

I love working for A.E.T. and expect to retire from our great company. Between now and then, it is my intention to move into other areas of the production process and become more involved in the production of our product.

In closing, I would like to apologise for the issue that has occured in leading to this letter and will strive to avoid any further conflicts with my co-workers.

Corbett's letter took a different tack:

I would like to apologize for my actions at work on the night of Wednesday, February 15th. My actions were not acceptable behavior for any workplace standards and I assure the Tenter 2 plant that this behavior from me, will not take place in the plant again. I reacted to a situation too quickly, without thinking about the consequences and the way in which my peers would view me. My desire at AET is to be trustworthy, honest, dedicated, and hard-working employee and I understand that my actions on 2/15/06 are in no way a reflection of those qualities that I bring to work each day. In the future, if faced

with this type of situation again, I will walk away and notify plant supervision of the disagreement.

I have expressed my feelings and apology in this letter, and I hope that you consider this in determining my future at AET. I bring the above mentioned qualities to work each day along with attention to detail that I feel could benefit AET for years to come. I would like to be looked upon as a leader in my duties, and allowing me to continue my employment at AET would help this become a reality. Sorry for my actions and please accept this sincere apology.

Thank you for your time and consideration.

After reviewing both of these letters, and taking into account Runyon's earlier incidents with Luz-Reyes and Willman, Hamilton decided to terminate Runyon's employment. He passed that recommendation up the chain and shared the background documents with his superiors. Believing that Corbett's letter showed genuine regret for the incident and a commitment to improve, he did not recommend firing Corbett. Management accepted Hamilton's recommendations and fired Runyon effective February 24, 2006.

## II

Runyon filed this suit on March 6, 2007, raising a claim under the ADEA against Extrusion and under supplemental state theories against Corbett. As we noted earlier, the case went to trial, but the district court granted judgment as a matter of law in Extrusion's favor

after Runyon's case-in-chief. See FED. R. CIV. P. 50(a). On the same day, Runyon settled with Corbett. The court entered judgment in Extrusion's favor on July 16, 2009, and Runyon filed his notice of appeal on August 12, 2009. The court did not dismiss the claim against Corbett until August 24, 2009, and so the notice of appeal was premature. Once the case against Corbett was resolved, however, the notice became effective for the entire case. See FED. R. APP. P. 4(a)(2). Appellate jurisdiction is therefore secure, and we may proceed to consider Runyon's arguments.

Runyon spends some time in his brief arguing that the district court erred by applying a different standard to Extrusion's summary judgment motion than it did to the Rule 50(a) motion. That argument gets him nowhere, for several reasons. First, our review for either type of motion is *de novo*, and so it really does not matter whether the district court was correct the first time or the second time. See *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003). Once trial began, the only question was whether Runyon had put enough evidence before the jury to permit it to decide in his favor. To the extent that Runyon is arguing that the district court was not free to change its mind after it ruled on the summary judgment motion, he is mistaken. Doctrines such as "law of the case" do not prohibit the trial judge from revisiting an earlier ruling while there is still time to prevent error. See, *e.g.*, *Abel v. Dubberly*, 210 F.3d 1334, 1337-38 (11th Cir. 2000) (holding that the "law of the case" does not bar the district court from granting judgment as a matter of law after having denied

summary judgment earlier); *St. Louis Convention & Visitors Comm'n v. National Football League,* 154 F.3d 851, 860 (8th Cir. 1998) (same); *Sagendorf-Teal v. County of Rensselaer,* 100 F.3d 270, 277 (2d Cir. 1996) (same). Furthermore, as the district court pointed out, between the time it ruled on the first and second motion, the Supreme Court handed down its decision in *Gross,* 129 S. Ct. 2343, which at a minimum clarified the legal standards for finding liability under the ADEA. Although in a strict sense *Gross* had little effect on Runyon's case, because he was not trying to assert that Extrusion had acted with mixed motives, the district court was entitled to take advantage of more general insights from *Gross* when it considered the second motion.

The second misstep Runyon makes is to analyze this case using the indirect method of proof first outlined by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), as if we were reviewing a ruling on summary judgment. Runyon had a chance to present his full case-in-chief at the trial. By that time, the *McDonnell Douglas* sequence of steps falls away, and we are left only with the question whether the plaintiff presented enough evidence to allow a rational jury to rule in his favor—here, to conclude that Extrusion's real reason for firing him was his age, not his repeated dust-ups with his co-workers. See *Greene v. Potter,* 557 F.3d 765, 769 n.1 (7th Cir. 2009); *Massey v. Blue Cross-Blue Shield of Illinois,* 226 F.3d 922, 925 (7th Cir. 2000); see generally *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981).

Runyon believes that a jury could find that age was the real reason for his dismissal, because (the jury might think) age was the only thing that distinguished him from Corbett. In many respects, Corbett and Runyon are similarly situated. Both had the same job, for approximately the same time, and both reported to the same supervisors. But no jury could fail to see the differences. Neither Runyon nor Corbett was scoring particularly well in the category "cooperation with others" on company evaluation forms: Runyon got a 4 out of 10 at his 120-day review, and Corbett also got a 4 out of 10. But, unlike Runyon, there is no evidence that Corbett was engaged in his third major conflict with a co-worker in six months or so. Before the February 15 incident, Corbett's record showed only a few minor problems getting along with co-workers, and it noted that this had improved. Runyon wanted the district court to admit evidence of a negative evaluation Corbett received six months after the fight that led to Runyon's firing, but the court reasonably decided to exclude it because hindsight is irrelevant.

Runyon also tries to fit this case into the group of those where the jury would refuse to believe the employer because of the latter's shifting and inconsistent explanations. But the evidence does not support that charge. Extrusion explained at trial that Runyon was fired primarily because he was involved in three altercations. This is consistent with earlier statements from company officials. Hamilton told Runyon that he was losing his job because he did not fit in. The personnel records show that Runyon was fired for creating a hostile work environment, which seems like a reasonable-

enough way to describe his effect on his co-workers. Hamilton also mentioned at trial that Runyon's failure to accept responsibility for his actions in his apology letter played a part in the decision. That is not so much a shift in explanation as an indication that Extrusion had reason to believe that the problems it was experiencing with Runyon were not likely to go away. *Cf. Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 578-79 (7th Cir. 2003).

### III

Extrusion also notes that Runyon was replaced by a 44-year-old man, just two years younger than Runyon, and that Runyon was fired by the same person (Hamilton) who hired the replacement. The Supreme Court has observed that if an employee who is in the class protected by the ADEA is replaced by someone who is not "substantially younger" (*i.e.*, ten years or so), no inference of age discrimination is generally appropriate. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996). Runyon is unimpressed by Extrusion's action, because, as he points out, the company did not replace him until it knew that he was charging it with age discrimination. At best, however, this means that Extrusion cannot use the age of the replacement as evidence tending to refute discrimination. It does nothing to help Runyon carry his burden of proving that Extrusion acted for unlawful reasons.

In the final analysis, Runyon's case boiled down to the proposition that he and Corbett were both undesirable

employees, but that Extrusion fired only the older of the two. He has no other evidence tending to show that Extrusion would have retained him if he had been the younger of the two. It is important to recall that it was Runyon's burden to show that age was the real reason for his firing, not Extrusion's burden to show that it was not. *Gross*, 129 S. Ct. at 2351-52. The district court correctly found that Runyon did not present enough evidence to reach the jury on that central question.

We therefore AFFIRM the judgment of the district court.