In the

# United States Court of Appeals

### For the Seventh Circuit

No. 23-3250

TANYA BLUMENSHINE,

*Plaintiff-Appellant.*

*v.*

BLOOMINGTON SCHOOL DISTRICT NO. 87,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:21-cv-01227-JES-JEH — **James E. Shadid**, *Judge.*

ARGUED SEPTEMBER 17, 2024 — DECIDED AUGUST 29, 2025

Before EASTERBROOK, HAMILTON, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge*. Special educator Tanya Blumenshine alleges her employer, an Illinois public school district, created an unlawfully hostile work environment based on her age under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* The district court granted summary judgment to the school district. Blumenshine appeals. Blumenshine failed to adduce evidence from which a

reasonable juror could conclude that she suffered workplace hostility based on her age. We therefore affirm.

**I**

Tanya Blumenshine was born on May 7, 1967. Since 1989, Blumenshine has worked for Bloomington School District No. 87, a public school district in Bloomington, Illinois. She has primarily served as a kindergarten teacher. Relevant here, Blumenshine was employed at Stevenson Elementary School from 2001 to 2019, and at Sheridan Elementary School from 2019 to the present.

Throughout her 18 years teaching at Stevenson, Blumenshine was an exemplary teacher. By all accounts, she performed with distinction, helping some of the District's most challenged students. The dynamic started to change on May 21, 2019, when Blumenshine, then age 52, learned she was being involuntarily transferred from Stevenson to Sheridan. On that day, Blumenshine attended a meeting with Stevenson Principal Katy Killian. Killian informed her that she would be transferred from Stevenson to Sheridan for the 2019–2020 academic year.

In addition to Killian, the other decisionmakers on Blumenshine's transfer were Dr. Barry Reilly (the District's Superintendent), Herschel Hannah (the District's Assistant Superintendent for Human Resources), and Jennifer McGowan (Sheridan's Principal). Superintendent Reilly and Principal Killian stated that the District reassigned Blumenshine to replace a struggling, less experienced teacher at Sheridan. Reilly emphasized that Blumenshine had already "been a successful teacher" at Stevenson, which "houses [the District's] most

severe and profound special education program." He therefore had confidence in her ability to succeed at Sheridan.

The transfer did not go smoothly. Blumenshine identifies four categories of harassment. She claims that the District: (1) assigned her a disproportionate number of behaviorally-challenged students; (2) erroneously criticized her job performance; (3) made intentional efforts to sabotage her teaching efforts by not providing her with proper classroom support; and (4) employed an administrator who intimidated her on one occasion.

Blumenshine believes she experienced this workplace harassment at Sheridan because of her age. Blumenshine agreed in her deposition that no one at Sheridan has ever made any statement denigrating her on the basis of her age. But she testified that "the only" explanation for her treatment working at Sheridan was "that I'm older."

First, Blumenshine emphasizes the undisputed fact that, of the three kindergarten classes at Sheridan, hers was the most challenging. When Blumenshine started at Sheridan, there were three kindergarten classrooms, one of which was hers. In the whole incoming kindergarten class, there were six students who scored as needing special academic support and six who exhibited "physical behavioral tendencies," two of whom had Individual Education Plans (IEP) related to their physician aggression. The record is unclear, however, as to both when exactly this scoring occurred and how many of these students were in her class. Reading the record in the light most favorable to Blumenshine, we assume that at most ten of these students were placed in her class: five of each group of kindergarteners needing academic or behavioral support, including both students with IEPs. She requested

that Sheridan Principal Jennifer McGowan transfer some of the challenged students to another class, but that request was denied. McGowan maintains that she had nothing to do with the kindergarten classroom assignments and that the challenging nature of Blumenshine's class, while unfortunate, was "unknown until the students began attending school" since these students were in kindergarten.

Second, Blumenshine felt unfairly criticized. She points to an incident on September 26, 2019, where Principal McGowan entered her classroom and proceeded to "yell and berate[]" her for "pitting" McGowan and parents against one another. Relatedly, on October 9, 2019, McGowan emailed Blumenshine after a parent complained that her son was injured by another student in Blumenshine's class. McGowan further questioned Blumenshine's classroom "behavior management strategy," and expressed concerns about how "extra recess" time was being used in Blumenshine's classroom. McGowan requested a meeting with Blumenshine to discuss the issues.

That meeting happened on October 17, 2019. At the meeting, Principal McGowan gave Blumenshine a memo listing over a dozen recommended behavioral interventions to assert greater control over her students and de-escalate conflicts between them. Blumenshine felt the recommendations were "super condescending, first-year teacher instructions" inapplicable for someone like her "who has 30 years with this grade level with exemplary evaluation[s]." In addition to the October 17 meeting, Blumenshine was subjected to two similar meetings on October 24 and November 14.

Third, Blumenshine claims the District's denial of her request for a full-time Crisis Prevention and Intervention (CPI)

classroom aide to support her two IEP students also contributed to the hostile work environment. CPI-certified aides are those that are trained to put physical "holds" on children "when they're being completely unsafe with themselves or others." Blumenshine believes her classroom experience would have been improved if she had been assigned a CPI-certified aide, but Principal McGowan explained that the administration's goal was to assist Blumenshine in being "proactive" through verbal conflict de-escalation exercises to avoid subjecting students to physical restraint.

Blumenshine testified that the two IEP students in her class were not receiving the special attention required by law, adding to challenges in her classroom. Blumenshine emailed the District on behalf of one of the students, arguing that the student was not receiving his legal benefits under his IEP, which the District disputed. To Blumenshine, the District's denial amounted to "sabotage[]."

Lastly, Blumenshine identifies a confrontation with Dan Zummo, a "principal intern" at Sheridan. McGowan explained that, as a principal intern, Zummo was a current teacher in training for promotion to principal in the District under her supervision and performed similar tasks to Principal McGowan. On October 15, 2019, at 4:00 p.m., Zummo unlocked and entered Blumenshine's classroom and positioned himself between her and the only doorway. During their exchange, he questioned her struggles at Sheridan, noting that she had come from Stevenson, "a school where kids punched children in the face or…children punched teachers in the face." Zummo then asked, "Like what's going on with you

this year?" Blumenshine told Zummo she felt threatened and "baited" and asked him to leave. He complied five minutes later.

The next day, Blumenshine emailed Zummo and McGowan to report the incident. She wrote:

> As a woman who is also older, I am asking that you do not enter my classroom again before 8:15 a.m. or after 3:45 p.m. unless, of course, a child is in danger. At 4:20 p.m., I asked you to leave and you did not. Continuing your narrative with putting words in my mouth that I did not say or think, standing and taking great pause left me shaken.

After the school switched to remote learning at the start of the COVID-19 pandemic, Principal McGowan herself was involuntarily transferred away from Sheridan. Blumenshine still worked at Sheridan on August 13, 2021, when she filed a one-count complaint against the District, alleging that it had unlawfully created a hostile work environment based on her age in violation of the ADEA. After discovery, the district court granted the District's motion for summary judgment, holding that, among other things, Blumenshine failed to adduce evidence from which a reasonable juror could conclude that (1) the District created an objectively hostile work environment, and that (2) even if it were otherwise, she had not shown that the conditions she encountered were due to her age. Blumenshine appealed.

## II

This Court reviews grants of summary judgment de novo. *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). Summary judgment is appropriate when, drawing all reasonable

inferences in the nonmovant's favor, there is no genuine dispute of material fact. *Bunn v. Khoury Ents., Inc.*, 753 F.3d 676, 681–82 (7th Cir. 2014).

## III

Before turning to the merits, we address a threshold dispute: whether the ADEA permits hostile work environment claims. The district court followed a line of this Court's cases that "have 'assumed, but never decided, that plaintiffs may bring hostile work environment claims under the ADEA.'" *Tyburski v. City of Chicago*, 964 F.3d 590, 600–01 (7th Cir. 2020) (quoting *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005)).

We have repeatedly assumed that hostile work environment claims are cognizable under the ADEA and for good reason. Start with the ADEA's text, which provides that an employer may not "otherwise discriminate against any individual" who is 40 years of age or older "with respect to [her] compensation, terms, conditions, or privileges of employment." 29 U.S.C. §§ 623(a), 631(a). Identical clauses feature in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Americans with Disabilities Act, 42 U.S.C. § 12112(a). The phrase "conditions[] or privileges of employment" is drawn directly from the earlier-enacted text of Title VII and, in the context of those claims, the Supreme Court has long-held that this language creates a cause of action for hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). The Supreme Court has instructed us that "when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."

*Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (importing Title VII constructions to parallel language in the ADA).

As we recognized in interpreting identical text in the ADA, "Congress wrote the ADA using the language of Title VII, and Title VII recognizes hostile work environment claims." *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 852 (7th Cir. 2019). Just as with the ADA, at some point, "extended hypothetical analysis [about whether a claim exists] should end." *Id.* (citation omitted). *See also Rivera-Rivera v. Medina & Medina, In*c., 898 F.3d 77, 91 (1st Cir. 2018) (citations omitted) (recognizing hostile work environment claim under the ADEA as actionable); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (same); *Dediol v. Best Chevrolet*, 655 F.3d 435, 441 (5th Cir. 2011) (same); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (same); *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 921–22 (8th Cir. 2018) (same); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991) (same), *superseded on other grounds by Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2015); (same) *Steele v. Mattis*, 899 F.3d 943, 943–44, 952 (D.C. Cir. 2018) (same). Whether or not Blumenshine's claim under the ADEA exists (which we are inclined to believe it does), her claim nonetheless fails because she has not put forth any evidence of age-based harassment.

To establish a hostile work environment claim based on her age, Blumenshine must demonstrate that "(1) she was subject to unwelcome harassment, (2) the harassment was based on her [age], (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere, and (4) there is a

basis for employer liability." *Tyburski*, 964 F.3d at 601 (citation omitted).

We apply a holistic approach to evaluating the parties' evidence in hostile work environment cases. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Under that approach, the analysis boils down to whether "the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

We find that Blumenshine has not offered sufficient evidence for a jury to find that age-based animus motivated any of the conduct about which she complains. The only evidence connecting the complained-of conduct to age-based animus is Blumenshine's own belief. When asked why she believed McGowan engaged in age discrimination, she stated that

> [t]he only difference is that I am older. Again this is a subjective question. You know like how I mentioned before, I can't get into her head. But it was very obvious that she was intentionally harassing – discriminating against me and harassing me. I do not believe that she would have done that if I were her age.

This testimony does not satisfy Blumenshine's burden to provide "sufficient evidence to support a jury verdict that alleged harassment was based on [her] age." *Halloway v. Milwaukee Cnty.*, 180 F.3d 820, 827 (7th Cir. 1999). Blumenshine's contentions are purely speculative and conclusory and so are not enough to move her claims past summary judgment. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) (personal knowledge "does not include speculating as to an employer's state of mind, or other intuitions, hunches, or

rumors"). Besides her own belief, there is no evidence—direct or circumstantial—suggesting any conduct directed at Blumenshine was age-based. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) ("It is well-settled that [the plaintiff's] speculation may not be used to manufacture a genuine issue of fact.").

Blumenshine attempts to conjure up other evidence of age-based animus, but none of the evidence she points to moves the needle. For example, she suggests that the involuntary transfer from Stevenson should be interpreted as age discrimination. But uncontroverted evidence establishes that Blumenshine was transferred from Stevenson as a lifeline for a struggling inexperienced teacher, not based on age animus. There is a glaring absence of evidence that Blumenshine's transfer had anything to do with her age. Nevertheless, she emphasizes a dispute of fact as to whether her May 21, 2019, meeting with Killian was recorded. True, the parties dispute this fact; but that fact is not material. *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) ("A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (internal quotation marks and citation omitted)). In other words, even if the District recorded the meeting and lied about destroying it as Blumenshine suggests, that still does not show that the transfer occurred based on her age. *See Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) ("The ADEA protects workers 40 years of age or older from *age-based* employment discrimination." (emphasis added)).

Blumenshine also contends that we can infer age discrimination based on the actions of the staff at Sheridan. She cites Principal McGowan's email and performance review

meetings as such evidence. However, those incidents stemmed from a parent complaint and, in any case, had no relationship to Blumenshine's age. The parties agree that no one made even an ambiguous age-related remark during those meetings. Far from reflecting age-based animus, the discussions reflected a genuine pedagogical disagreement: Blumenshine favored a CPI aide and immediate physical restraint for unruly children, while McGowan preferred de-escalation to avoid using restraint at all.

For similar reasons, the District's denial of her IEP-related request on behalf of a student gets her nowhere. At best, the denial is irrelevant to our ADEA analysis because, again, there is no evidence linking it to Blumenshine's age. At worst, Blumenshine's argument here undermines her age claim insofar as she testified that Killian wanted to remove her from Sheridan because of her complaints about IEP non-compliance. *Cf. Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (affirming summary judgment in favor of defendant where "[the plaintiff's] sole basis for [arguing the alleged behaviors were based on racial hostility] is the fact that he is African–American" and noting "[t]he 'harassment' of which [plaintiff] complains could just as readily have been perpetrated upon a white person without any alteration in its character or purpose").

Finally, Blumenshine's confrontation with Zummo also does not support an inference of age discrimination. Simply put, the record provides us with no reason to think that Zummo acted with age-based animus. Without diminishing Blumenshine's contention that Zummo acted in a manner that made her feel threatened, this incident, standing alone, does not permit an ADEA hostile work environment claim to

survive summary judgment. *See Runyon v. Applied Extrusion Techs., Inc.*, 619 F.3d 735, 740–41 (7th Cir. 2010) (holding that it is the plaintiff's burden to show that defendant was motivated by age discrimination, rather than defendant's "burden to show that it was not." (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).

The District is entitled to summary judgment on Blumenshine's ADEA claim because there is no reasonable basis to infer that she experienced any workplace harassment on the basis of her age.

Accordingly, we AFFIRM the judgment of the district court.